UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

CLIVE CAMPBELL,

**MEMORANDUM AND ORDER**

Plaintiff,                    20-CV-3471(KAM)

-against-

CARLOS HUERTAS,

Defendant.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Clive Campbell ("Plaintiff") commenced this action on July 31, 2020 against Carlos Huertas ("Defendant"), alleging, *inter alia*, violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* for infringement of the Plaintiff's DJ KOOL HERC registered trademark. (*See* ECF No. 1, Complaint, ("Compl.").) Plaintiff's motion for default judgment seeks the following relief for trademark infringement: (1) statutory damages pursuant to 15 U.S.C. § 1117; (2) pre-judgment interest at the rate set forth in 26 U.S.C. § 6621(a)(2); (3) attorneys' fees and costs; and (4) injunctive relief preventing Defendant from using Plaintiff's DJ KOOL HERC mark. (*See* ECF No. 26-1, Plaintiff's Memorandum of Law

1

in Support of Plaintiff's Motion for Default Judgement, ("Pl. Mem."), at 5-6.)[1]

For the reasons set forth below, Plaintiff's motion for default judgment is GRANTED in part and DENIED in part. The Court awards Plaintiff (1) $4,000 in statutory damages; (2) costs of $463, (3) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), to be calculated from the date judgment is entered until the date of payment; and (4) permanent injunctive relief. The Court denies Plaintiff's application for attorneys' fees and pre-judgment interest.

## BACKGROUND

### I.   Factual Background

Where a defendant defaults, a court must accept the plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-88 (2d Cir. 2015). The Court consequently accepts Plaintiff's well-pleaded factual allegations as true for the purpose of reviewing his motion for default judgment.

Plaintiff Clive Campbell is "an internationally famous entertainer and disc jockey, born in Jamaica West Indies and

---

[1] All pagination pin citations refer to the page number assigned by the court's CM/ECF system.

2

currently residing in the United States." (Compl. ¶ 16.)  Plaintiff is widely known under his nickname "DJ Kool Herc" and has "continued to remain an iconic figure in the hip-hop and music industry" since the 1970s.  (*Id.* ¶ 18.)  On May 29, 2018, Plaintiff filed a trademark for "DJ KOOL HERC," which was registered on July 9, 2019.  The registration states that the mark "consists of standard characters without claim to any particular font style, size or color."  (*See* ECF No. 26-5, Ex. B.)

Plaintiff alleges he has been using the "DJ Kool Herc" nickname (the "DJ Kool Herc Mark") as a trademark throughout the United States, and that he has expended substantial time, money and resources successfully developing, promoting, and advertising this mark and his brand.  (Compl. ¶¶ 3, 4, 22.)  Plaintiff also alleges that the DJ Kool Herc Mark has been in use "continuously and exclusively," and that the mark has become famous.  (Compl. ¶¶ 5, 23, 30, 33, 34.)  Plaintiff further states that he has "entered into licensing and other similar agreements with third parties, for the authorized use of the DJ KOOL HERC mark" for a "variety of goods" sold in commerce.  (Pl. Mem. at 6.)

Plaintiff alleges that Defendant has been designing, selling and distributing "various products," including t-shirts using the KOOL HERC mark, without authorization.  (Compl. ¶ 6.)  This alleged infringement postdates the first use of the mark by Plaintiff.  (Compl. ¶ 37.)  Plaintiff contends that Defendant sold

these "various products" through various media, platforms, and websites, namely www.rageon.com. (Compl. ¶ 35.) Plaintiff only proffers one example of these "various products," which is a black t-shirt portraying an individual using turntables. (ECF No. 26-7, Ex. D at 9.) The portrayed individual has the year "1973" printed on his shirt with the words "HIP-HOP" above and "KOOL HERC" below the individual. (*Id.*) Plaintiff alleges that he is the individual portrayed on the t-shirt. (Compl. ¶ 6.)

Plaintiff asserts Defendant's products "were of a particular aesthetic not aligned with Plaintiff," and they are of a "substantially lower quality than the products offered by Plaintiff or his licensees." (Compl. ¶ 42; Pl. Mem. at 7.) Plaintiff also alleges that the Defendant's use of the trademark has caused confusion, mistake, and deception regarding the source of these goods. (Compl. ¶¶ 43, 45.) Specifically, Plaintiff claims that the Defendant's use was meant to confuse and mislead customers into thinking they were buying products associated with Plaintiff. (*Id.*)

## II.  **Procedural Background**

Plaintiff commenced the instant action on July 31, 2020, and thereafter properly served the Summons and Complaint on Defendant. (ECF No. 5, Summons Issued as to Carlos Huertas; ECF No. 11, Summons Returned Executed [by Plaintiff's Process Server].)

Plaintiff has properly alleged jurisdiction under the Lanham Act, 15 U.S.C. § 1051, and 28 U.S.C. §§ 1331 and 1338(a). Plaintiff has also properly alleged that this court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1) and N.Y. C.P.L.R. § 302(a)(3), or in the alternative Fed. R. Civ. P. 4(k), because Defendant regularly conducts, transacts, and solicits business in New York and in this judicial district via his online store, www.rageon.com. (*See* Compl. ¶ 14.) Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2) as acts giving rise to this complaint occurred within this district. (*Id.* ¶ 15.)

Although Defendant was properly served on November 11, 2020, he failed to answer, move, or otherwise respond to the Complaint. The Clerk of Court certified Defendant's default on December 10, 2020. (ECF No. 14, Clerk's Entry of Default.) On December 14, 2020, Plaintiff moved for default judgment. (ECF Nos. 16, 17.) In an order dated April 19, 2021, this Court denied Plaintiff's motion without prejudice for failure to serve the Defendant with notice of the motion for default and supporting documents, pursuant to Local Civil Rule 55.2(c), and for failure to prove the alleged damages with reasonable certainty. Plaintiff then filed his second motion for default judgment on May 10, 2021. (ECF Nos. 20, 21.) On September 28, 2021, this Court referred the motion to Magistrate Judge Robert M. Levy.

5

On February 22, 2022, Judge Levy entered his Report and Recommendation ("R&R") recommending that Plaintiff's motion for default judgment be granted.  Judge Levy further recommended that Plaintiff be awarded statutory damages of $4,000 plus pre-judgment interest; that Defendant be permanently enjoined from infringing Plaintiff's trademark; and that Plaintiff's request for attorney's fees and costs be denied.  (ECF No. 23.)  No objections were filed to the well-reasoned R&R, however, on March 17, 2022, the Court respectfully declined to adopt the R&R and denied the motion for default judgement without prejudice on procedural grounds: Plaintiff failed to comply again with Local Civil Rule 55.2(c), regarding service of the motion for default judgment and supporting materials on Defendant.

On April 18, 2022, Plaintiff renewed the motion (ECF No. 26, Third Proposed Motion for Default Judgement), and properly complied with Local Civil Rule 55.2(c). (*See* ECF No. 26-13, Certificate of Service.)  To date, Defendant has not answered or otherwise responded to Plaintiff's Complaint or motion for entry of default judgement.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, a movant must complete a two-step process to obtain a default judgment. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011); *La Barbera v. Fed. Metal & Glass Corp.*, 666 F.

Supp. 2d 341, 346-47 (E.D.N.Y. 2009). First, the Clerk of the Court must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Second, upon the Clerk's entry of default, the movant "may then make an application for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)." *Rodriguez*, 784 F. Supp. 2d at 123. " 'The court is to exercise sound judicial discretion' in determining whether the entry of default judgment is appropriate." *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011) (quoting *Badian v. Brandaid Commc'ns Corp.*, No. 03-CV-2424, 2004 WL 1933573, at *2 (S.D.N.Y. Aug. 30, 2004)), *report and recommendation adopted,* 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011). "In evaluating a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), the [c]ourt must accept as true the well-pleaded allegations in the complaint," except those relating to damages. *Id.* at *2 (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154-55 (2d Cir. 1999)). Further, the non-defaulting party is "entitled to all reasonable inferences from the evidence offered." *See Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Here, the Clerk of Court entered default against Defendant on December 10, 2020. (ECF No. 14.) Plaintiff thereafter filed the third successive unopposed motion for default judgment presently before the court. (ECF No. 26.) As noted, the Summons and Complaint were properly served on Defendant (ECF Nos. 5, 11), as was the third motion for default judgement. (ECF No. 26-13, Certificate of Service of the Notice of Motion of Default Judgement and Supporting Materials.) Defendant has neither appeared, nor moved to vacate the Clerk's entry of default, nor opposed the motion for default, despite being provided notice. Consequently, Plaintiff has completed the necessary procedural steps to obtain a default judgment. *See Bricklayers Ins. & Welfare Fund v. David & Allen Contracting, Inc.*, No. 05-CV-4778, 2007 WL 3046359, at *2 (E.D.N.Y. Oct. 16, 2007) ("In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default.") (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).

## DISCUSSION

### I. Liability

#### A. Legal Standard

Defendant's default in this case, however, "does not necessarily conclusively establish ... defendant[s'] liability." *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007).

As such, this Court "must still determine whether ... plaintiff has stated a cause of action." *Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, 2009 WL 982424, at *3 (E.D.N.Y. Apr. 10, 2009) (citing *Au Bon Pain Corp.,* at *3 ("Nevertheless, '[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" (alteration in original) (quoting *In re Wildlife Ctr., Inc.*, 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989))).

To establish liability for infringement under the Lanham Act, "a plaintiff must prove that he owns a valid protectable trademark; that the defendant used the trademark in commerce and without consent; and that there was a likelihood of consumer confusion." *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 295 (E.D.N.Y. 2015) (citing *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005)).

### B. Application

In his action, Plaintiff argues the Defendant engaged in trademark infringement, false designation of origin, and false endorsement pursuant to 15 U.S.C. § 1125(a) and 15 U.S.C § 1114(1). (*See* Pl. Mem. at 11.)  Whether a trademark infringement claim is brought under § 1114(1) or § 1125(a), the

9

same analysis applies to both.  "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *see also Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993).

**First**, Plaintiff has established he owns a valid protectable mark.  Here, Plaintiff's DJ KOOL HERC mark has been a federally registered mark since 2019.  (*See* ECF No. 26-5, Ex. B.)  Such registration is "prima facie evidence that the mark is registered and valid (*i.e.,* protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce."  *See Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999); *see also* 15 U.S.C. § 1115.

**Second**, Plaintiff has shown that Defendant used the mark in commerce.  A mark is used in commerce when it is "placed in any manner on the goods . . . and the goods are sold or transported in commerce."  15 U.S.C. § 1127.  To determine whether a plaintiff has satisfied the "use in commerce" requirement, courts ask "whether the trademark has been displayed to consumers in connection with a commercial transaction."  *Kelly-Brown v. Winfrey*, 717 F.3d 295, 306 (2d

10

Cir. 2013).  Plaintiff has shown that Defendant used the mark by selling t-shirts on www.rageon.com with "KOOL HERC" printed on them.  (ECF No. 26-7, Ex. D at 4.)  Thus, Plaintiff has satisfied the second element by showing that the mark was clearly used in commerce by Defendant.

**Third**, Plaintiff has shown that Defendant used this mark without his consent.  Plaintiff states that he "never authorized Defendant Carlos Huertas to design, sell, or distribute products" bearing the DJ Kool Herc mark.  (ECF No. 26-4, Ex. A., Affidavit of Clive Campbell ("Campbell Aff.") at 2.)  Plaintiff also sent a cease-and-desist notice dated June 26, 2020 to Defendant regarding Defendant's unauthorized use of the mark.  (ECF No. 26-7, Ex. D. at 5-7.)  Thus, this element is also satisfied.

**Finally**, Plaintiff must prove that Defendant's unauthorized use of the mark is likely to cause confusion.  To determine the likelihood of confusion, courts in the Second Circuit ordinarily apply the eight-factor test set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495-96 (2d Cir. 1961): (1) the strength of the senior mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith (or bad faith) in adopting its own mark; (7) the quality of

11

defendant's product; and (8) the sophistication of the buyers. *Savin Corp. v. Savin Grp.,* 391 F.3d 439, 456 (2d Cir. 2004) (citing *Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

     ***Strength of the mark***.  This factor weighs in favor of Plaintiff.  This factor encompasses two different concepts.  *See Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003).  The first concept is "inherent strength" (also called "inherent distinctiveness") which is measured by "its distinctiveness or the degree to which [the mark] indicates the source or origin of the product."  *See Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992). Here, Plaintiff's trademark is registered, which means it is presumed to be distinctive and afforded the utmost protection. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986) (citations omitted).  The second concept is the fame of the mark, that is, the extent to which prominent use of the commerce has resulted in a high degree of consumer recognition.  *Virgin Enterprises Ltd.*, 335 F.3d at 147. Plaintiff asserts that he has "been known as 'DJ Kool Herc' since the 1970s" and that he has "spent a large sum of money on advertising and promoting the 'DJ Kool Herc' mark and brand in the United States and worldwide."  (Campbell Aff. at 2.) Plaintiff also states that the mark has "become strong, famous,

and well-known in the United States and around the world for various products and services including products offered to consumers." (*Id.*)  The mark's distinctiveness and the consistency and longevity of its use weigh in Plaintiff's favor here.  *See, e.g., Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 522 (S.D.N.Y. 2009) (citations omitted) (finding commercial success, advertising expenditures, and media coverage reinforce the strength of a mark).

   ***Similarity of the mark***.  This factor also weighs in Plaintiff's favor.  "The crux of the issue is whether the similarity is likely to cause confusion among numerous customers who are ordinarily prudent."  *Savin Corp.,* 391 F.3d at 458 (quoting *Swatch Group (U.S.) Inc. v. Movado Corp.*, 2003 WL 1872656 at *3 (S.D.N.Y. Apr. 10, 2003)).  "[C]ourts must analyze the marks' overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers."  *Malletier v. Burlington Coat Factory Warehouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005).

   Here, Plaintiff has claim to the mark "DJ KOOL HERC" in standard characters (ECF No. 26-5, Ex. B. at 2), and Defendant printed "KOOL HERC" on the t-shirt he sold.  (ECF No. 26-7, Ex. D. at 4; *see also id.* at 2 ("No claim is made to the exclusive right to use 'DJ' apart from the mark as shown."))

Although Plaintiff concedes that the t-shirt sold by Defendant is not identical to any product currently sold by Plaintiff (Compl. ¶ 49), given the portrayal of an individual alleged to be Plaintiff on turntables, the words "HIP-HOP" above the portrayal, and the number 1973 on the shirt, it is very likely that an ordinarily prudent customer would confuse this shirt as being endorsed, sponsored, or otherwise authorized by Plaintiff. (*See also* ECF No. 26-7, Ex. D, Demand to Cease and Desist, at 5 (explaining that Plaintiff "Campbell, a/k/a the 'DJ Kool Herc', is a Jamaican DJ who is credited with helping originate hip hop music in the Bronx, New York City, in the 1970s through his 'Back to School Jam' hosted on **August 11, 1973**, at 1520 Sedgwick Avenue") (emphasis added).)

***Proximity between the two products and likelihood that Plaintiff will "bridge the gap."*** Both factors weigh slightly in Plaintiff's favor. Although Plaintiff affirms that the "products offered by [Defendant] were of a significantly lower quality than Products offered by me or my licensees" (Campbell Aff. at 3), Plaintiff has not specifically stated or shown what products or goods he or his licensees sell that are competitive with Defendant's. Plaintiff also states that the goods sold by Defendant are "not identical to the goods and services currently offered under the DJ KOOL HERC Mark by Plaintiff" but does not plead further as to what Plaintiff's own offerings are. (Compl.

14

¶ 49.)  Plaintiff has also not addressed whether he already has bridged or plans to bridge the gap into advertising or selling clothing merchandise with the mark himself.

Nonetheless, even if there is a lack of direct competition, it is not dispositive.  *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 396 (2d Cir. 1995).  The focus of the proximity factor is whether a customer would be confused as to the source of the products.  *Id.; see also Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986) (finding the proximity factor in favor of the challenging party where the two products were in different market segments because a "different market segment makes this type of confusion *more likely*").

Here, it is reasonable that a customer would assume Plaintiff would enter the merchandising market to capitalize on his fame or that Plaintiff had lent his mark and likeness to Defendant for use on the shirts.  *See MGM-Pathe Commc'ns Co. v. Pink Panther Patrol,* 774 F. Supp. 869, 875 (S.D.N.Y. 1991) ("[M]embers of the public could easily draw the inference that the [plaintiff] has loaned its name to the defendants' cause[.]").  Thus, regardless of whether Plaintiff is already in direct competition with Defendant or whether Plaintiff has already bridged or intends to bridge that gap, customers are

15

likely to be confused as to whether Plaintiff authorized Defendant to sell these shirts.

*Actual confusion*.  Actual confusion "need not be shown to prevail under the Lanham Act, because actual confusion is very difficult to prove, and the Act requires only a *likelihood* of confusion as to source." *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 456 (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)) (emphasis in original).  As already stated in the discussion of the third and fourth *Polaroid* factors, there is a likelihood that consumers would be confused as to the source of the t-shirts.

*Bad faith*.  This consideration is neutral or weighs slightly, at best, in Plaintiff's favor.  "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005).  To demonstrate bad faith, Plaintiff must show that Defendant had "an intent to promote confusion or exploit good will or reputation." *Id.*  Bad faith may be inferred where a junior user has actual or constructive knowledge of the senior user's mark.  *Id.*  Plaintiff alleges that, "with knowledge of Plaintiff's rights in the DJ KOOL HERC Mark," Defendant "intentionally reproduced, copied and/or

16

colorably imitated the DJ KOOL HERC Mark on products in an attempt to mislead consumers and capitalize upon Plaintiff's fame and the DJ KOOL HERC Mark's recognition and goodwill." (Compl. ¶ 45, 57.)

Moreover, Plaintiff's counsel affirms that "Defendant responded to the [cease-and-desist letter] but failed to provide any evidence showing the cessation of its infringing activities." (ECF 26-2, Affirmation of Anastasi Pardalis ("Pardalis Aff.") ¶ 5.) Plaintiff, however, does not allege other conduct by Defendant nor has the Plaintiff provided Defendant's purported response to the cease-and-desist letter. *See E.A. Sweet Co., Inc. v. A&M Deli Express Inc.*, 2018 WL 1283682, at *6 (E.D.N.Y. Mar. 9, 2018) (noting that the "limited record . . . left defendant's motivations unclear"); *see also Deep Foods Inc. v. Deep Foods Inc.,* 419 F. Supp. 3d 569, 582 (W.D.N.Y. 2019) ("[A]side from Defendants' default, Plaintiff does not allege other conduct by Defendants from which the Court could infer Defendants acted with the requisite intent to sow confusion.").

***Quality of the defendant's products.*** This factor is neutral or at best weighs very slightly in favor of Plaintiff. "This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow*

17

*Fastener Co.,* 59 F.3d at 398.  Although Plaintiff's conclusory allegation that Defendant's products are of "substantially lower quality" than Plaintiff's must be accepted as true, the allegation is not particularly well-pleaded, nor is it unsupported by other evidence on the record.  In theory, by using Plaintiff's mark, Defendant is preventing Plaintiff from controlling the quality of the shirts sold and taking advantage of Plaintiff's brand.  Without actually knowing the quality of Defendant's products relative to any of Plaintiff's products, however, this factor can only be given slight weight.

> ***Sophistication of the relevant consumer.***  This factor does not weigh for or against Plaintiff, who does not offer any argument regarding the sophistication of the target consumer. (*See generally* Pl. Mem. at 12-14.)

On balance, the Plaintiff has demonstrated Defendant's product created a likelihood of confusion.  The Court finds default judgement on Plaintiff's claim for Defendant's trademark infringement warranted.

## II.  Damages

In the context of a motion for default judgment, allegations pertaining to liability are deemed admitted, but those pertaining to damages must be proven by the movant. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to

constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). After liability is determined, damages must be established "to a 'reasonable certainty.' " *Duro v. BZR Piping & Heating Inc.,* 2011 WL 710449, at *2 (E.D.N.Y. Jan. 26, 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)), *report and recommendation adopted*, *Duro v. BZR Piping & Heating Inc.*, 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011). The court need not hold a hearing to determine damages "as long as it [has] ensured that there [is] a basis for damages specified in the default judgment." *Id*. (alterations in original). When evaluating damages, the court "may rely on affidavits or documentary evidence." *Id.* (citing *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d. Cir. 1993); *Chun Jie Yin v. Kim,* No. 07-CV-1236, 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008)).

Here, Plaintiff seeks statutory damages, pre-judgment interest, injunctive relief, and attorney's fees and costs. (Pl. Mem. at 5-6.) The court will address each in turn.

### A. Statutory Damages

*i. Legal Standard*

Under the Lanham Act, a plaintiff may seek an award of statutory damages instead of actual damages. 15 U.S.C. § 1117(c). Statutory damages should be "not less than $1,000 or

more than $200,000 per counterfeit mark," *id.* § 1117(c)(1), or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(2).

Statutory damages are also particularly useful to in the context of a default judgment action because "without discovery, plaintiffs often lack any evidence to prove actual damages." *Turn On Prods., Inc. v. Almost Famous Apparel, LLC*, No. 18-CV-0625 (ILG) (RER), 2019 WL 2436297, at *5 (E.D.N.Y. Apr. 12, 2019). In cases "[w]here there is little evidence to support the amount of damages that plaintiff requests, courts often award far-below the statutory maximum and far-below the plaintiff's demand." *Id.; see also Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 WL 1131401, at *4-6 (E.D.N.Y. Mar. 11, 2011) (awarding $ 1,000,000 in statutory damages instead of the maximum award because of, *inter alia*, the "absence of proof of a substantial or highly profitable counterfeiting enterprise"), *report and recommendation adopted, Rolex Watch, U.S.A., Inc. v. Pharel,* 2011 1130457 (E.D.N.Y. Mar. 28, 2011); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08-CV-5781 (CM) (AJP), 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) ("Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual

sales figures and profits and the estimate of plaintiff's lost revenue and defendant's profits is not in the millions of dollars.").  Further, statutory damages have a punitive aspect. *Mun. Credit Union v. Queens Auto Mall, Inc.*, 126 F. Supp. 3d 290, 297 (E.D.N.Y. 2015); *cf. Yurman Design, Inc. v. PAJ, Inc*., 262 F.3d 101, 113-14 (2d Cir. 2001) (noting that "statutory damages are not meant to be merely compensatory or restitutionary" but are also meant "to discourage wrongful conduct") (internal quotations and citation omitted).

To determine a "just award," courts in the Second Circuit consider the following factors: (i) the expenses saved and the profits reaped; (ii) the revenues lost by the plaintiff; (iii) the value of the copyright; (iv) the deterrent effect on others besides the defendant; (v) whether the defendant's conduct was innocent or willful; (vi) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (vii) the potential for discouraging the defendant."  *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425 n.4 (S.D.N.Y. 2018) (collecting factors from *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc*., 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotations omitted).

### ii. Application

The **first** and **second** factors weigh little in Plaintiff's favor.  The record shows that Defendant sold the t-shirts for $19.99.  (ECF No. 26-7, Ex. D. at 4.)  Plaintiff also states that "Defendant provided evidence that he sold at least four shirts and likely would have continued to sell infringing content had Plaintiff's attorneys failed to police the plaintiff's marks."  (Pl. Mem. at 16.)  Plaintiff, however, has not provided any such evidence to the Court, nor has Plaintiff provided evidence that he lost potential revenue as a result of the infringement.  Without evidentiary support or even allegations regarding expenses saved, profits reaped, or revenues lost, these factors do not themselves justify Plaintiff's request of $4,860 in statutory damages.  (*See id.*)

The **third** factor, value of the copyright, weighs in favor of Plaintiff.  As discussed previously, Plaintiff states he has been known as "DJ Kool Herc" since the 1970s, and that he has "spent a large sum of money on advertising and promoting the 'DJ Kool Herc' mark and brand in the United States and worldwide."  (Campbell Aff. at 2.)  Plaintiff also maintains that the mark has "become strong, famous, and well-known in the United States and around the world for various products and services including products offered to consumers."  (*Id.*)

22

Plaintiff has thus established that the mark has considerable strength and value.

The **fourth** factor, deterrent effect on others besides Defendant, weighs in Plaintiff's favor.  Considering the established strength and value of the mark, it is reasonable to infer there is a need to deter potential infringers.  The **fifth** factor, whether Defendant's conduct was innocent or willful clearly weighs in Plaintiff's favor as well.  Willfulness can be established by a defendant's default.  *HP Inc. v. Zthy Tech Inc.*, 2022 WL 17773774, at *4 (E.D.N.Y. July 13, 2022); *see also Deckers Outdoor Corp. v. Huang*, 2017 WL 1842556, at *7 (E.D.N.Y. Apr. 20, 2017), *report and recommendation adopted, Deckers Outdoor Corp. v. Huang,* 2017 WL 1854728 (May 5, 2017); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. Sept. 11, 2003).  The **sixth factor** also weighs in Plaintiff's favor, as Defendant has not appeared or defended this action, let alone cooperated by providing records.  **Finally**, the last factor weighs in Plaintiff's favor, as Defendant is in default and nothing in the record suggests that Defendant has taken any steps to stop infringing upon Plaintiff's mark.

The strength and value of the copyright, Defendant's willful conduct and lack of cooperation in this action, and the need to deter both Defendant and potential infringers are persuasive reasons to award damages above the statutory

23

minimum.  Indeed, some courts in this district have awarded up to even ten times the statutory minimum in light of a defendant's willful infringement.  *See, e.g., Turn On Prods., Inc.*, 2019 WL 2436297, \*7; *Stark Carpet Corp v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 156 (E.D.N.Y. 2013).  Here, Plaintiff has not provided a formula or explanation for the requested statutory damages of $4,860, nor provided evidence or even alleged that Defendant's harm concretely exceeded four t-shirts sold.  With those considerations in mind, on both de novo and clear error review, the Court finds that the appropriate measure of statutory damages is $4,000, four times the statutory minimum, for the reasons stated above and in Judge Levy's R&R.[2]  *See, e.g., Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 158 (E.D.N.Y. 2010) (noting that although the court was not conflating statutory damages with actual damages, evidence regarding a defendant's sales could still inform the determination of statutory damages as well); *id.* at 157 ("[W]hile it may exceed actual damages, an award of statutory damages does not constitute a windfall for prevailing

---

[2] In the absence of objections to an R&R, the Court "need only satisfy itself that there is no clear error on the face of the record." *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (citation omitted).

plaintiffs.")[3]

### B. Attorney's Fees and Costs

Plaintiff also seeks pre-judgment interest on the
statutory damages, as well as attorney's fees and costs.

#### i. Legal Standard of "Exceptional" Cases

Pursuant to 15 U.S.C. § 1117(a), the court may award
reasonable attorney's fees to the prevailing party in
"exceptional cases."   Under recent Second Circuit precedent,
there is no presumption that cases involving willful
infringement are necessarily exceptional. *See 4 Pillar Dynasty
LLC v. New York & Company, Inc.*, 933 F.3d 202, 216 (2d Cir.
2019); *see also Sleepy's LLC v. Select Comfort Wholesale Corp.*,
909 F.3d 519, 531 (2d Cir. 2018) ("We now join [other Circuit
Courts], concluding that under the Lanham Act, an exceptional

---

[3] Although the Ninth Circuit has held that 15 U.S.C. § 1116(d)(1) requires
that "the genuine mark was registered for use on the same goods to which the
infringer applied the mark," the Second Circuit has not weighed in on this
issue as of the date of this Memorandum & Order. *See Louis Vuitton
Malletier, S.A. v. Akanoic Sols., Inc.*, 658 F.3d 936, 346 (9th Cir. 2011).
In this Court's view, it is logical that the protections of § 1116(d) would
apply to goods and services that are reasonably related to the goods and
services for which the mark is registered. *See Johnson & Johnson and
Lifescan, Inc. v. South Pointe Wholesale, Inc.*, 2014 WL 12558573, at *11
(E.D.N.Y. Apr. 4, 2014) (rejecting defendants' argument that § 1116(d)(1) is
limited to the registered goods and services on the grounds that that the
offending items were "use[d] 'in connection with' the goods for which the
marks are registered"). Although the DJ KOOL HERC mark is only registered
under the categories of (1) downloadable musical sound recordings; digital
music downloadable from the Internet; sound recordings featuring music and
(2) entertainment services, Defendant's offending t-shirts here — which
feature the KOOL HERC mark, the words "hip-hop," and turntables —- are
clearly related to music and entertainment services. (*See* ECF No. 26-7, Ex.
D. at 2, 4.)  The trademark applicant should not be burdened with specifying
every conceivable potential use of the registered mark in order to be
reasonably protected.

case is one that stands out from others in the manner articulated by *Octane Fitness*.")  The Supreme Court in *Octane Fitness* defined an "exceptional" case as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

　　　*ii. Application*

　　　Under *Octane Fitness*, district courts have "wide latitude" to engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances" to determine whether a case classifies as exceptional.  *See 4 Pillar Dynasty LLC*, 933 F.3d at 215.  In similar cases, courts in this Circuit have found the "exceptional" case standard to be satisfied in light of factors such as the substantive strength of the plaintiff's case, the defendant's "objectively unreasonable" conduct, and to achieve the deterrence and compensation policy implications of the Lanham Act.  *See Glob. Commodities, Inc. v. Dayax, LLC*, 2022 WL 431426, at *3 (E.D.N.Y. Jan. 13, 2022), *report and recommendation adopted*, 2022 WL 426182 (E.D.N.Y. Feb. 11, 2022).

　　　Here, Plaintiff has sufficiently established trademark infringement liability whereby Defendant used Plaintiff's mark

26

and likeness without prior authorization in order to benefit from Plaintiff's fame and long-cultivated reputation.  Further, Defendant frustrated the litigation process by not answering the Complaint or otherwise appearing in or defending the action at all, despite being served with the Complaint on November 11, 2020, more than two years ago.  (ECF No. 11.)  On the other hand, by defaulting and not litigating the action, Defendant did not cause Plaintiff to incur the expense and risks of litigation.  Moreover, the compensation and deterrence purposes of the Lanham Act have been served here by damages that will discourage Defendant from further infringement and compensate Plaintiff for the harm done.

After considering the "totality of the circumstances," the Court finds that this case is not "exceptional," particularly where Plaintiff's counsel did not expend time and effort litigating the case and did not perfect the default motion until the third attempt.  *See, e.g., Aime Leon Dore, Inc. v. TASTR. GmbH*, 2021 WL 6797294, at *15-16 (E.D.N.Y. Jan. 8, 2021) ("Although Defendants defaulted, a default judgment alone does not necessarily amount to an exceptional circumstance."); *see also Luxottica Group S.p.A. v. Wafa Ali, Inc.,* 2021 WL 2525098, at *7 (W.D.N.Y. June 21, 2021) (finding that the plaintiffs had not proven that the circumstances of the case

27

were "exceptional").  As a result, the Court declines to award attorneys' fees to Plaintiff.

Plaintiff also requests a recovery of $463 for the costs of the action.  (Pardalis Aff. ¶ 34.)  The $463 is the product of the cost of filing the complaint, $400, and the service fee, $63.  (*See* ECF No. 26-11, Ex. H.)  A court may grant an award of costs under the "principles of equity" standard under § 1117(a), and the court finds that Plaintiff is entitled to recover these reasonable costs.

### C. Pre-judgment Interest

Although pre-judgment interest is not explicitly contemplated by 15 U.S.C. § 1117(a), the Second Circuit has found that it may be awarded by applying the same "exceptional" case standard.  *See 4 Pillar Dynasty LLC*, 933 F.3d at 215-16 (citing *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)).  The Court has already found that this case is not "exceptional" and accordingly denies pre-judgment interest.

### D. Injunctive Relief

Lastly, Plaintiff requests a permanent injunction enjoining Defendant "from placing Plaintiff's mark on [his] products or advertising [his] products through the use of Plaintiff's mark."  (Pl. Mem. at 19-20.)

28

It is well-established that a court may grant a
permanent injunction as part of a default judgment.  *Rovio
Entertainment, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d
536, 546-47 (S.D.N.Y. 2015) (collecting cases).  A permanent
injunction should be granted when a plaintiff demonstrates: "(1)
that it suffered an irreparable injury; (2) that remedies
available at law are inadequate to compensate for that injury;
(3) that the balance of hardships between the parties warrants a
remedy in equity for the plaintiff; and (4) that the public
interest would not be disserved."  *eBay Inc. v. MercExchange,
L.L.C.*, 547 U.S. 388, 391 (2006).  In trademark infringement
cases, irreparable harm is almost always found where a
probability of confusion exists because of the "unique nature of
the trademark's function in representing such an intangible
asset as reputation and good will."  *See Johnson & Johnson v.
Azam Int'l Trading*, 2013 WL 4048295, at *12 (E.D.N.Y. Aug. 9,
2013) (cleaned up) (internal quotations and citation omitted).

First, given the likelihood of confusion arising from
Defendant's goods, discussed *supra*, Plaintiff would lose control
of his reputation and goodwill, causing irreparable harm in the
absence of an injunction.  *See U.S. Polo Ass'n, Inc. v. PRL USA
Holdings, Inc.*, 800 F. Supp. 2d 515, 540-41 (S.D.N.Y.
2011), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order).
As in *U.S. Polo Ass'n, Inc.*, Plaintiff here would lose control

over the quality, customer interaction, and brand image of the DJ Kool Herc Mark that Plaintiff has cultivated and strived to maintain.  *See id.*  Second, the injunction is appropriate because the loss of reputation and goodwill cannot be quantified, and no adequate remedy at law can compensate Plaintiff.  *Id.* at 541 (citing *Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts*, 937 F.2d 77, 80 (2d Cir.1991)); *see also Stark Carpet Corp v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 158 (E.D.N.Y. 2013) ("A defendant's refusal to appear in this action demonstrates the inadequacy of plaintiff's remedies at law.") (citation omitted).

Similarly, the balance of hardships weighs in favor of injunctive relief because Plaintiff has spent time, money, and resources since the 1970s to establish, develop and promote his mark.  *See Coty Inc. v. Excell Brands, LLC,* 277 F. Supp. 3d 425, 464-65 (S.D.N.Y. Sept. 18, 2017) (finding this factor weighed in favor of the plaintiff where the plaintiff spent millions of dollars on marketing and sold its perfumes for decades as opposed to the defendant's lack of marketing and recent entry into the market); *Stark Carpet Corp.,* 954 F. Supp. 2d at 163-64 (observing that most courts typically find injunctive relief proper where plaintiff offers evidence that losing control of its mark would cause significant harm).  Moreover, it is "axiomatic that an infringer. . . cannot complain about the loss

30

of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.,* 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted).

Finally, the public interest is served by issuing injunctive relief because it would protect the public from deception, mistake, and confusion. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *Ideavillage Prod. Corp v. OhMyGod 1*, 2020 WL 6747033, at *4 (S.D.N.Y. Nov. 17, 2020) ("A permanent injunction would also promote the public interest in freedom from deception in the marketing of consumer goods."). As a result, Plaintiff's request for a permanent injunction enjoining Defendant "from placing Plaintiff's mark on [his] products or advertising [his] products through the use of Plaintiff's mark."

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is GRANTED in part and DENIED in part. Plaintiff is entitled to (1) $4,000 in statutory damages; (2) costs of $463, (3) post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), to be calculated from the date judgment is entered until the date of payment; and (4) a permanent injunction against Defendant for the infringing conduct. The Court denies the

application for attorneys' fees and pre-judgment interest for the reasons stated above.  The Clerk of Court is respectfully directed to enter judgment, and to close the case.  Plaintiff is ordered to serve a copy of this Memorandum and Order on Defendant and file a declaration of service once the Clerk of Court enters judgment.

**SO ORDERED.**

Dated:      February 13, 2023
            Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge